FILED

2018 May-02  PM 01:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHWESTERN DIVISION

| | | |
|---|---|---|
| **WHITESELL CORPORATION** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | |
| | ) | |
| **SCREW PRODUCTS, INC. and BILL** | ) | **CIVIL ACTION NO.** |
| **MARTHENS** | ) | **3:16-CV-929-HNJ** |
| | ) | |
| **Defendants.** | ) | |

## THIRD AMENDED COMPLAINT

Plaintiff Whitesell Corporation, by and through its undersigned counsel, brings this Third Amended Complaint against Defendants Screw Products, Inc. ("SPI") and SPI's sole owner and director, Bill Marthens, and alleges as follows:

## JURISDICTION AND VENUE

1.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1).

2.     This Court has personal jurisdiction over Defendants pursuant to Alabama's long-arm statute and consistent with the U.S. Constitution because Defendants are engaged in substantial business activity in the State of Alabama, and Whitesell's causes of action arise from Defendants personally, or through their agents, causing injuries within the State of Alabama. At the time of such injuries, products, materials, or things manufactured, sold, distributed and supplied by Defendants were shipped to, used, and consumed within the State of Alabama in the ordinary course of commerce, trade or use. Moreover, Defendants consented to personal jurisdiction in Alabama in their contract with Whitesell.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims herein occurred in this district.

## PARTIES AND ALLEGATIONS PERTANING TO VEIL-PIERCING

4.      Plaintiff Whitesell Corporation is an Alabama corporation doing business in the State of Alabama. It manufactures, assembles, distributes, and sells a variety of products, including fasteners, formed metal parts, assemblies, and other high-volume, low-cost materials (also known as "Class C" components).

5.      Defendant Screw Products, Inc. ("SPI") is a foreign corporation that distributes and sells washers and other fastening products and that does business in the State of Alabama.

6.      Defendant Bill Marthens is the sole owner, director, and officer of SPI. Upon information and belief, Marthens is a resident of Texas.

7.      Marthens has used SPI and its predecessor entities for several years now as a means of avoiding personal liability. In fact, Marthens and SPI are alter egos, as evidenced by, among other things, Marthens' complete control of SPI. Marthens owns all SPI stock and is SPI's sole director and officer. Upon information and belief, SPI is grossly undercapitalized. For these reasons and others, it is fair and equitable to treat SPI as an extension and instrumentality of Marthens.

## FACTUAL ALLEGATIONS

8.      On or about January 29, 2015, Whitesell contracted with Defendants for the purchase of fifty-six thousand (56,000) five-eighths inch (5/8") nominal size, Type I hardened steel flat washers conforming to a specification established by testing organization American Society for Testing and Materials ("ASTM") and known in the industry to require an established range of hardness (the "F436 Specification").

9.     The requirement that requested washers conform to the F436 Specification was a material element of the contract between Whitesell and Defendants.

10.     The purchase was commemorated in writing via Whitesell Purchase Order #139263 and was expressly made subject to Whitesell's General Terms and Conditions for Supplier (the "Contract").

11.     The governing law and jurisdiction were specifically addressed in the Contract as follows:

> The parties acknowledge and agree this Agreement has been executed and delivered in the State of Alabama, United States of America. This contract shall be interpreted and construed according to the laws of the State of Alabama, without regard to its conflict of law principles and of the United Nation's Convention for the International Sale of Goods shall not apply. This contract may be enforced only in courts within Alabama, United States of America. The parties agree that such courts shall have venue and exclusive subject matter and personal jurisdiction, and consent to service of process by registered mail, return receipt requested, or by any other manner provided by law.

(Section 29 – Governing Law; Jurisdiction).

12.     On or about January 30, 2015, Defendants delivered 56,000 washers to Whitesell's facility in Colbert County, Alabama. The invoice and shipping documents provided by Defendants with the washers represented that the washers conformed to the F436 Specification. Defendants had also stamped the washers with the label "F436," representing that the washers met this material standard. Relying upon Defendants' representations that the washers met the F436 Specification, Whitesell paid Defendants $1,537.20 for these washers on or about February 4, 2015.

13.     Whitesell's customer subsequently purchased these washers from Whitesell for use in assembling multiple bolted joint applications on its commercial, flatbed trailers ("trailers").

14.     On or about May 13, 2015, the customer informed Whitesell that it had discovered cracks in the body of the subject washers following installation in the bolted joints of the trailers, potentially causing physical damage to the trailers. Whitesell immediately undertook an investigation to determine whether the subject washers were defective.

15.     On or about June 29, 2015, after concluding its initial investigation and testing, Whitesell sent to Defendants Notice of Supplier Concern #4011, stating that it appeared the subject washers did not conform to the F436 Specification.

16.     Subsequent investigation and testing confirmed that the subject washers were indeed defective and nonconforming. Specifically, the washers exceeded the upper range of hardness that is allowed under the F436 Specification, which made the washers too brittle and easily broken.

17.     Because of their defective and nonconforming character, the subject washers necessitated a product safety recall monitored by the National Highway Traffic Safety Administration ("NHTSA"), which in turn required substantial remediation and replacement of all installed washers together with all fastener system components used with the washers. The recall notice stated: "In the affected trailers, the hardened washers used in the bolted connections that secure the upper coupler, landing gear and suspensions to the trailer sub-frame may crack."

18.     On August 7, 2015, Whitesell reimbursed its customer for the cost of repairing the trailers which had been damaged due to the faulty washers.

19.     Defendants improperly manufactured, designed, distributed, delivered, imported, supplied, inspected, installed, tested, marketed, warranted, and/or sold the defective and nonconforming washers made the basis of this suit.

20.     Whitesell provided documentation to Defendants demonstrating that the defective washers failed to meet the F436 Specification. Whitesell presented to Defendants a demand for payment and backup for all of the costs incurred as a result of Defendants' defective washers. Whitesell provided details identifying the NHTSA product recall, the direct and proximate connection to Defendants' defective washers, along with the resulting costs to Whitesell and its customer. Defendants have failed to compensate Whitesell for any of these costs, despite Whitesell's repeated requests.

21.     In addition to the subject washers, Whitesell supplies other fasteners to its customer that are installed with the subject washers, including bolts and nuts, to make a bolted joint application.

22.     Whitesell's customer installs the subject washers with the other fasteners in multiple bolted joint applications on its trailers. These bolted joint applications hold together a trailer's landing gear, wheel assembly, structural supports, kingpin, axle placement adjuster, and the coupling that is used to attach a trailer to a truck.

23.     These trailers are sold to end customers who pull them behind tractor trailers on public roads and highways to carry loads as heavy as 60,000 pounds.

24.     Whitesell's customer had installed the subject washers on its trailers when the washers began to suddenly and accidentally break. The broken washers damaged and diminished the structural integrity and strength of the other fasteners installed with the subject washers.

25.     The broken washers and damaged fasteners also damaged the bolted joint applications where the fasteners were installed. Each of these damaged applications compromised the structural integrity of the bolted joint in question as well as related components.

26.     The subject washers placed each affected trailer in an unsafe condition until the fasteners were replaced and the damage to the related components was assessed.

27.     Because the tightening of each fastener to a specified torque range stretches or elongates the threads, it is unsafe for any fastener to be reinstalled or reused on any trailer.

28.     The defective washers placed each trailer in which they were installed in a potentially unsafe condition. As a result, all fasteners in the bolted joint application were required to be replaced.

29.     In each bolted joint application in which the subject washers were installed, the other fasteners were required to be removed and scrapped along with the subject washers at a cost exceeding $1,000 per damaged trailer.

30.     The defective nature of the subject washers subjected each affected trailer to recall by the NHTSA.

31.     On March 2, 2018, Whitesell discovered that despite Defendants' representations that the subject washers they provided to Whitesell met F436 Specifications, Defendants had no idea whether these representations were true. Though Defendants knew and understood the importance of both the F436 Specification and meeting bargained-for standards in general, Defendants had no knowledge of who conducted the testing on the washers or the tester's accreditations or certifications (if any). Indeed, it has become apparent that Defendants made a

material representation to Whitesell with neither the intention nor the capability to independently ensure its veracity.

## COUNT ONE
### Negligence
### (against Defendant SPI)

32.     Whitesell incorporates by reference the foregoing paragraphs as if fully set out herein.

33.     The subject washers were manufactured, designed, distributed, supplied, delivered, imported, inspected, tested, marketed, sold, warranted, installed, advertised and/or otherwise placed into the stream of commerce by SPI.

34.     SPI owed a duty to Whitesell to exercise reasonable and ordinary care in the manufacture, design, distribution, delivery, importation, supply, inspection, testing, marketing, warranting and/or sale of the subject washers.

35.     SPI negligently breached its duty to Whitesell by improperly manufacturing, designing, distributing, delivering, importing, supplying, inspecting, testing, marketing, selling, warranting, or otherwise placing into the stream of commerce the subject washers.

36.     As a direct and proximate result of SPI's negligence, Whitesell has suffered damages.

WHEREFORE, premises considered, Whitesell demands judgment against SPI for compensatory damages, including attorneys' fees, interest and costs; punitive damages; equitable relief and such other and further relief as this Honorable Court may deem warranted.

## COUNT TWO
### Breach of Implied Warranty of Merchantability

37.    Whitesell incorporates by reference the foregoing paragraphs as if fully set forth herein.

38.    Defendants are merchants, sellers, suppliers, manufacturers and/or distributors of the subject washers.

39.    Defendants impliedly warranted to Whitesell that the subject washers were merchantable and reasonably fit for the ordinary purposes for which they are used.

40.    At the time that Defendants designed, manufactured, distributed, supplied, delivered, imported, inspected, tested, marketed, warranted, sold and/or otherwise placed into the stream of commerce the defective and nonconforming subject washers, they knew or should have known the general purpose for which the subject washers were being acquired and that Whitesell was relying upon Defendants' skill, knowledge, judgment, and experience to select and furnish goods suitable, fit and merchantable for use in this manner.

41.    Defendants breached the implied warranty of merchantability by designing, manufacturing, distributing, supplying, delivering, importing, inspecting, testing, marketing, warranting, selling and/or otherwise placing into the stream of commerce subject washers that are defective, nonconforming and not reasonably fit for the ordinary purposes for which they are used.

42.    From and after the time the subject washers left Defendants' control, the subject washers were not merchantable due to their defective nature and failure to conform to the F436 Specification.

43.    Consequently, Defendants breached the implied warranty of merchantability.

44.     As a direct and proximate result of Defendants' breach of the implied warranty of merchantability, Whitesell suffered damages.

WHEREFORE, the premises considered, Whitesell demands judgment against Defendants for compensatory damages, including attorneys' fees, interest and costs; punitive damages; equitable relief and such other and further relief as this Honorable Court may deem warranted.

## COUNT THREE
### Breach of the Implied Warranty of Fitness for a Particular Purpose

45.     Whitesell incorporates by reference the foregoing paragraphs as if fully set out herein.

46.     Defendants are merchants, sellers, suppliers, and/or distributors of the subject washers.

47.     Defendants impliedly warranted to Whitesell that the subject washers were reasonably fit for the Whitesell's particular purpose.

48.     At the time that Defendants designed, manufactured, distributed, supplied, delivered, imported, inspected, tested, marketed, warranted, sold and/or otherwise placed into the stream of commerce the defective and nonconforming subject washers, they knew or should have known that Whitesell was relying upon the Defendants' skill, knowledge, judgment, and experience to select and furnish goods suitable and fit for use in a bolted joint application and conforming to the F436 Specification.

49.     Defendants breached the implied warranty of fitness for a particular purpose by designing, manufacturing, distributing, supplying, delivering, importing, inspecting, testing, marketing, warranting, selling, and/or otherwise placing into the stream of commerce subject

washers that were defective, nonconforming, unsuitable, and unfit for Whitesell's particular purpose.

50.     As a direct and proximate result of Defendants' breach of the implied warranty of fitness for a particular purpose, Whitesell has suffered damages.

WHEREFORE, the premises considered, Whitesell demands judgment against Defendants for compensatory damages, including attorneys' fees, interest and costs; punitive damages; equitable relief and such other and further relief as this Honorable Court may deem warranted.

## COUNT FOUR
### Breach of Express Warranty

51.     Whitesell incorporates by reference the foregoing paragraphs as if fully set forth herein.

52.     Defendants are merchants, sellers, suppliers, and/or distributors of the subject washers.

53.     Defendants expressly warranted to Whitesell that the subject washers conformed to the F436 Specification.

54.     Defendants breached this express warranty by selling, supplying, distributing and/or providing to Whitesell the subject washers, which did not conform to the F436 Specification.

55.     As a direct and proximate result of Defendants' breach of this express warranty, Whitesell has suffered damages.

WHEREFORE, premises considered, Whitesell demands judgment against Defendants for compensatory damages, including attorneys' fees, interest and costs; punitive damages; equitable relief and such other and further relief as this Honorable Court may deem warranted.

## COUNT FIVE
### Breach of Contract

56.     Whitesell incorporates by reference the foregoing paragraphs as if fully set forth herein.

57.     Defendants are merchants, sellers, suppliers, and/or distributors of the subject washers.

58.     The Contract entered into by Defendants and Whitesell was a legally binding and enforceable contract in which Defendants promised to sell, supply, distribute and/or otherwise provide to the Whitesell fifty-six thousand (56,000) five-eighths inch (5/8") hardened steel flat washers conforming to the F436 Specification. In exchange, Whitesell promised to – and did in fact – pay to Defendants the sum of $1,537.20.

59.     The Contract clearly spelled out Defendants' warranty obligations as follows:

> Seller warrants/guarantees that the goods covered by this contract will conform to the specifications, drawings, samples, or descriptions furnished to or by Buyer, and will be merchantable, of good material and workmanship and free from defect. In addition, Seller acknowledges that Seller knows of Buyer's intended use and warrants/guarantees that all goods covered by this contract that have been selected, designed, manufactured or assembled by Seller based upon Buyer's stated use will be fit and sufficient for the particular purposes intended by Buyer. The warranty period shall be that provided by applicable law, except that if Buyer offers a longer warranty to its customers for goods installed on vehicles, such longer period shall apply.

(Section 9 – Warranty).

60.     As a direct and proximate result of Defendants' breach of contract, Whitesell has suffered damages.

WHEREFORE, premises considered, Whitesell demands judgment against Defendants for compensatory damages, including attorneys' fees, interest and costs; punitive damages; equitable relief and such other and further relief as this Honorable Court may deem warranted.

## COUNT SIX
### Unjust Enrichment

61.     Whitesell incorporates by reference the foregoing paragraphs as if fully set forth herein.

62.     Defendants are merchants, sellers, suppliers, and/or distributors of the subject washers.

63.     Under normal and intended usage, the subject washers failed to perform in accordance with the reasonable expectations of Whitesell and in accordance with the F436 Specification.

64.     Defendants knew or should have known of the risks posed by selling, supplying, distributing and/or providing to Whitesell defective and nonconforming washers.

65.     Defendants have wrongfully acquired a benefit in the form of proceeds and profits from the sale of the subject washers and have therefore been unjustly enriched at Whitesell's expense.

WHEREFORE, premises considered, Whitesell demands judgment against Defendants for disgorgement of proceeds and profits received from the sale of the defective subject washers; restitution to the Whitesell; equitable relief; money damages, including attorneys' fees, interest and costs; and such other and further relief as this Honorable Court may deem warranted.

## COUNT SEVEN
### Damage to Property

66.     Whitesell incorporates by reference the foregoing paragraphs as if fully set forth herein.

67.     As a natural and proximate consequence of Defendants' actions and/or omissions with respect to the subject washers, Whitesell lost the value of the other fasteners that were installed with the subject washers.

68.     As a natural and proximate consequence of Defendants' actions and/or omissions with respect to the subject washers, Whitesell had to reimburse its customer for damage to its fasteners that were installed with the subject washers.

69.     As a natural and proximate consequence of Defendants' actions and/or omissions with respect to the subject washers, Whitesell had to reimburse its customer for its costs to replace all fasteners used in the applications with the subject washers.

WHEREFORE, premises considered, Whitesell demands judgment against Defendants for compensatory damages, including attorneys' fees, interest and costs; punitive damages; equitable relief and such other and further relief as this Honorable Court may deem warranted.

## COUNT EIGHT
### Negligent/Fraudulent Misrepresentation

70.     Whitesell incorporates by reference the foregoing paragraphs as if fully set forth herein.

71.     Whitesell bargained and contracted with Defendants for 56,000 five-eighths inch (5/8") nominal size, Type I hardened steel flat washers conforming to the F436 Specification.

72.     Defendants knew that the washers' compliance with the F436 Specification was a material requirement of their contract with Whitesell.

- 13 -

- 14 -

73.     Defendants represented to Whitesell that the washers it provided subject to the contract complied with the F436 Specification. But at the time of this representation, Defendants had no way of knowing whether the washers did in fact meet the F436 Specification. Defendants' representation was thus made negligently and/or recklessly.

74.     Whitesell relied on Defendants' representations when purchasing the washers.

75.     Defendants benefitted financially from their misrepresentations.

76.     As a natural and proximate consequence of Defendants' misrepresentations, Whitesell has suffered damages.

WHEREFORE, premises considered, Whitesell demands judgment against Defendants for compensatory damages, including attorneys' fees, interest and costs; punitive damages; equitable relief and such other and further relief as this Honorable Court may deem warranted.


                                        Respectfully submitted by,

                                        */s/ David B. Block*_____
                                         David B. Block
                                         Thomas W.H. Buck, Jr.

                                         *Attorneys for Whitesell Corporation*

**OF COUNSEL**:
David B. Block
MAYNARD, COOPER & GALE, P.C.
Post Office Box 18668
Huntsville, AL 35804-8668
Telephone: (256) 551-0171
Facsimile: (256) 512-0119
Email: dblock@maynardcooper.com

Thomas W.H. Buck, Jr.
MAYNARD, COOPER & GALE, P.C.
1901 6th Avenue North
Birmingham, AL 35203
Telephone: (205) 254-1854
Facsimile: (205) 714-6440
Email: tbuck@maynardcooper.com

- 16 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing has been served upon all attorneys of record

in this matter, including without limitation the following, via email, hand delivery and/or U.S.

Mail on this the 2nd day of May, 2018:

Gary K. Grace
Bree Taylor Wilbourn
Jennifer M. Matthews
**GRACE, MATTHEWS & DEBRO**
108 North Jefferson Street
Huntsville, Alabama 35801
Telephone: (256) 534-0491
gem@graceattys.com
bwilbourn@graceattys.com
jmatthews@graceattys.com

*Attorneys for Defendants*

    /s/ *David B. Block*
David B. Block
OF COUNSEL